KENNARD, J., Concurring and Dissenting.
Does a federal law, the National Bank Act, preempt plaintiff’s state law causes of action for employment discrimination on the grounds of race and age? Justice Mosk’s lead opinion concludes: “[T]he answer that we must give is this: Yes and no.” (Lead opn., ante, at p. 154.) According to the lead opinion, the provision at issue here, codified at section 24, Fifth, of title 12 of the United States Code *180 has been “impliedly amended” by the later congressional enactments of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq; hereafter Title VII) and the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et seq.; hereafter ADEA). In the words of the lead opinion: “As impliedly amended by Title VII and the ADEA, section 24, Fifth, preempts [the state law cause of action] to the extent that it conflicts, but it does not to the extent that it does not.” (Lead opn., ante, at p. 154.)
I find no preemption because I do not share the lead opinion’s view that plaintiff is an officer within the meaning of the National Bank Act. Therefore, I agree with the lead opinion only to the extent it holds that plaintiff can pursue her state law causes of action. Unlike the lead opinion, I would not place any limitations on plaintiff’s state law claims.
I.
In 1995, plaintiff, a 45-year-old African-American woman, was one of defendant Bank of America’s branch managers carrying the title of “vice-president.” During a one-week period plaintiff caused the bank to suffer a loss of $135,000 when she approved for immediate credit a customer’s deposits of checks in the amounts of $100,000, $20,000, and $15,000 drawn on out-of-state accounts lacking sufficient funds to cover the checks. The bank then demoted her. The next day, plaintiff took an extended medical absence. Consistent with its policy, the bank terminated plaintiff when her medical absence exceeded 24 consecutive months.
Plaintiff sued, asserting, as here relevant, that she was demoted and terminated because of her race and age, in violation of California’s Fair Housing and Employment Act. (Gov. Code, § 12900 et seq.; hereafter FEHA.) The trial court granted bank’s motion for summary judgment on the ground that the National Bank Act preempted plaintiff’s FEHA causes of action. A divided Court of Appeal affirmed. We granted review.
II.
In 1864, Congress enacted the National Bank Act. One of its provisions grants national banks the authority to dismiss “at pleasure” a bank’s “president, vice president, cashier, and other officers . . . .” (12 U.S.C. § 24, Fifth; hereafter section 24(5).) Does plaintiff, who before her demotion was a branch manager with the title of “vice-president,” fall within this provision? I conclude she does not. In my concurring opinion in Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1105-1114 [282 Cal.Rptr. 841, 811 P.2d 1025], I explained the proper construction of this provision.
*181 “Section 24(5) specifically enumerates ‘president, vice president, and cashier.’ They are a bank’s ‘chief operating officers.’ [Citation.]
“The president of a bank is considered either the executive head of the institution, or the executive agent of the board of directors with authority similar to the authority of a director. [Citation.] As one court has explained: ‘Under the usages and customs of modem banking the president of a bank is no longer regarded as an ornamental magnet with which to attract deposits, but, on the contrary, is now, and has been for several years, recognized as the executive head and most important agent in connection with banking operations.’ [Citation.] Thus, the president of a bank occupies its highest office and may be its most important operational officer. [Citations.] Next in the bank’s hierarchy is the vice-president, who acts as the president in the event of the president’s absence or inability to act. [Citation.]
“The cashier is the bank’s institutionwide managing and executive officer [citations] through whom all of the bank’s financial operations are conducted. [Citations.] Because of these important and extensive responsibilities, the cashier is considered to possess greater power than the president of the bank. [Citation.]
“It is readily apparent from the above analysis that the bank officers enumerated in section 24(5) share these characteristics: they occupy the highest positions in the institution, they have bankwide authority and responsibility, and they are the institution’s chief operational officers.” (Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at pp. 1106-1107 (conc. opn. of Kennard, J.).)
As the majority in Wells Fargo v. Superior Court, supra, 53 Cal.3d at page 1090, acknowledged, however, “ ‘Depository institutions, and especially commercial banks, are notorious for their proliferation of vice-presidents ....’” An employee is not an officer covered by the National Bank Act simply by being called a vice-president; rather, it is necessary to examine the scope of the authority and responsibility with the bank. A branch manager, as the title itself reveals, manages not the bank but only one of its many branches. (Wells Fargo Bank v. Superior Court, supra, 53 Cal.3d at p. 1108 (conc. opn. of Kennard, J.).) A branch manager, even when as here given the title of vice-president, does not have bankwide authority and responsibility.
Thus, unlike my colleagues, I conclude that a bank manager is not a “vice-president” or “other officer[]” within the meaning of the National Bank Act. (Wells Fargo v. Superior Court, supra, 53 Cal.3d at p. 1107 (conc. opn. of Kennard, J.).) To hold that a national bank may dismiss “at pleasure” *182 anyone on whom it has, for instance, as here, conferred the title of vice-president without giving that person bankwide authority and responsibility would greatly expand the bank’s dismissal power beyond what Congress envisioned.
III.
In his lead opinion, Justice Mosk rejects as “unpersuasive” both defendant bank’s argument that the National Bank Act fully preempts FEHA and plaintiff’s argument it does not preempt FEHA at all. Instead, the lead opinion adopts a “partial” preemption approach. It holds that plaintiff’s FEHA cause of action is viable only to the extent it mirrors a cause of action under Title VII and the ADEA. (Lead opn., ante, at pp. 154, 172.) The lead opinion’s theory is that Congress “impliedly amended” section 24(5) of the National Bank Act when it enacted Title VII and the ADEA. (Lead opn., ante, at pp. 168-169.) The lead opinion reasons that because the preemptive effect of the National Bank Act does not extend to Title VII and the ADEA, and Title VII and the ADEA do not preempt state employment laws such as FEHA, the National Bank Act preempts FEHA only to the extent it exceeds the scope of Title VII and the ADEA.
The United States Supreme Court rejected similar reasoning in Shaw v. Delta Air Lines, Inc (1983) 463 U.S. 85 [103 S.Ct. 2890, 77 L.Ed.2d 490] (hereafter Shaw). In that case the plaintiff employers sought a declaratory judgment that the federal Employee Retirement Income Security Act of 1974 (29 U.S.C. § 1001 et seq.; hereafter ERISA) preempted the State of New York’s antidiscrimination laws. The high court described the federal Court of Appeals’ decision in that case as follows: “The Court of Appeals properly rejected the simplistic ‘double saving clause’ argument—that because ERISA does not pre-empt Title VII, and Title VII does not pre-empt state fair employment laws, ERISA does not pre-empt such laws. [Citation.] Title VII does not transform state fair employment laws into federal laws that § 514(d) saves from ERISA pre-emption.” (Shaw, supra at p. 101, fn. 22 [103 S.Ct. at p. 2902].)
In Shaw, ERISA section 514(d) limited its own preemptive force by expressly providing: “Nothing in this title shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law.” (29 U.S.C. § 1144(d); Shaw, supra, 463 U.S. at p. 91 [103 S.Ct. at p. 2897].) The high court in Shaw held that it would impair enforcement of Title VII if ERISA preempted state laws prohibiting the same discriminatory acts that Title VII prohibits. By contrast, the National Bank Act at issue here contains no similar *183 self-imposed limitation on its preemptive force, a crucial distinction the lead opinion fails to recognize. Because the National Bank Act does not limit its preemptive effect, there is no basis for adopting a partial preemption analysis as the lead opinion does. The National Bank Act’s preemptive effect on state law causes of action is absolute and unqualified; it completely preempts FEHA in all cases involving bank “officers.”[1] Thus, I cannot join the lead opinion’s conclusion of partial preemption of FEHA by the National Bank Act.
IV.
Because in my view plaintiff is not an officer within the meaning of the National Bank Act, I conclude that the National Bank Act does not preempt her FEHA state causes of action. Therefore, I would reverse the Court of Appeal’s judgment.

In the case of a plaintiff who is an “officer” within the meaning of the National Bank Act, I would agree with Justice Brown that the act fully preempts a state law FEHA cause of action. For in that situation the state law claim conflicts with the objectives of the National Bank Act. (Dis. opn. of Brown, J., post, at pp. 187-189.)

Winston Churchill, radio broadcast (Oct. 1, 1939).